**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS**

| | | |
|---|---|---|
| JENIFER HEFNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-3003 |
| | ) | |
| B.C.M.W. COMMUNITY SERVICES | ) | |
| d/b/a PROJECT B.R.E.A.D. | ) | |
| | ) | |
| Defendant. | ) | Jury Trial Demanded |

## <u>COMPLAINT AT LAW</u>

Plaintiff Jenifer Hefner, by her attorneys, the Garfinkel Group, LLC, complains against Defendant, B.C.M.W. Community Services d/b/a/ Project B.R.E.A.D., for hostile work environment sexual harassment and retaliation in violation of the Civil Rights Act of 1964 as amended, 42 U.S.C. 2000e, *et seq.* ("Title VII") and the Illinois Human Rights Act, 775 ILCS 5 *et seq.* ("IHRA"), and in support thereof states:

### PARTIES

1.     Plaintiff Jenifer Hefner ("Plaintiff"), a female, is a resident of Kell, Illinois.

2.     Defendant B.C.M.W. Community Services d/b/a/ Project B.R.E.A.D., ("Defendant") is an Illinois not-for-profit corporation with its principal place of business located at 1437 W Whittaker Street, Salem, Illinois 62881.

3.     B.C.M.W. Communited Services advertises its mission as "empower[ing] people by reducing poverty and strengthening communities."[1]

---

[1] BCMW Community Services, http://www.bcmwcommunityservices.org/home.html (last visited Aug. 24, 2023).

4.     Project B.R.E.A.D. is an acronym for "Basic Right of the Elderly to an Adequate Diet" and is a nutritional program offered by B.C.M.W. Community Services that provides healthy meals for senior citizens.[2]

5.     The meals are prepared onsite at a distribution center located at #26 Salem Business Center South, Salem, Illinois 62881. Once prepared, the meals are available for pickup or delivery.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e-5 (Title VII) and 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events leading to this action occurred here and Defendant is located here.

## PROCEDURAL REQUIREMENTS

8.     Plaintiff has complied with all administrative prerequisites by timely cross-filing a Charge of Discrimination with the Illinois Department of Human Rights ("IHRA") and the Equal Employment Opportunity Commissions ("EEOC"). See Exhibit A, Charge and accompanying documents.

9.     On June 6, 2023, the EEOC issued a Notice of Plaintiff's Right to Sue for Plaintiff's charges and as such, this is a timely filed Complaint. See Exhibit B, Notice of Rights.[3]

## FACTS

10.     On May 6, 2021, Plaintiff pleaded guilty to the charge of driving under the influence. As a condition of her sentence, the Marion County Probation Department assigned Plaintiff to perform 240 hours of community service.

---

[2] Project B.R.E.A.D., http://www.bcmwcommunityservices.org/project-b.r.e.a.d.---senior-nutrition.html (last visited Aug. 24, 2023).
[3] Plaintiff has requested and is waiting for an adoption of findings from the IDHR.

11.     In June of 2021, Plaintiff was placed on court supervision and assigned to complete her community service at Project B.R.E.A.D, where her duties included cleaning the facility, helping to prepare the patron meals, and talking to the patrons upon their arrival to the distribution site.

12.     One particular patron of Project B.R.E.A.D. was Neil Canon ("Canon").

13.     Canon was a known serial harasser to Project B.R.E.A.D. staff.

14.     Prior to being introduced to Canon, Plaintiff's supervisor, Kathy (last name unknown) ("LNU") and various other Project B.R.E.A.D. employees referred to Canon as a "pervert," and stated that he would harass them when he came to the facility.

15.     Plaintiff was told that because she was on community service, it would be her job to "deal with him."

16.     Canon's unwanted sexual harassment started immediately in Plaintiff's first interaction with him.

17.     Throughout Plaintiff's encounters with Cannon, he would make comments about Plaintiff's physical appearance, called her beautiful and said he wished she was single, licked his lips and moaned sexually, and frequently ogled Plaintiff.

18.     Plaintiff reported these comments and actions to her supervisor, Kathy (LNU), after every interaction with Canon but Plaintiff was still tasked with "dealing with" Canon each time he arrived.

19.     Despite Plaintiff's complaints, nothing was done to ameliorate or prevent the harassment.

20.     Canon's harassment of Plaintiff graduated to unwanted physical contact, typically in the form of kisses on the hand.

21.     Again, Plaintiff reported this unwelcome physical contact to Kathy (LNU) and rejected all advances.

22.     Again, nothing was done to stop or prevent the harassment by Canon and nothing was done to protect Plaintiff from him.

23.     On October 14, 2021 Plaintiff was physically assaulted by Canon.

24.     That day, Canon arrived to the facility around 10:00 a.m. When Canon arrived, Plaintiff was standing outside by the entrance. Canon began to look Plaintiff up and down, making her uncomfortable.

25.     In response to the unwanted attention and as an attempt to get away, Plaintiff sat on a bench adjacent to the entrance, in front of the storefront window. Canon approached and sat directly on Plaintiff's left.

26.     When Canon sat down, Plaintiff's hands were folded in her lap. Canon grabbed Plaintiff's hand and started kissing it, but then began licking and sucking on her fingers.

27.     Plaintiff immediately objected to Canon's conduct by pulling her hand away and jumping up from the bench. Canon responded by asking if it was "too much," to which she replied "yes, way too much."

28.     Plaintiff went inside and reported the incident to Kathy (LNU).

29.     Kathy (LNU) informed the director, Stephanie (last name unknown) ("LNU") of the incident.

30.     The next day, on October 15, 2021, Plaintiff received a call from Stephanie (LNU). On this call, Stephanie (LNU) told Plaintiff that she was terminnated from her position and banned from returning to Project B.R.E.A.D.

31.     Stephanie (LNU) claimed Plaintiff's termination was due to a "selfie" Plaintiff had taken at the Project B.R.E.A.D. facility and posted to her personal Facebook account two and a half months prior.

32.     The selfie at issue had no information identifying Project B.R.E.A.D. as the location except a corner of Stephanie (LNU)'s refrigerator was visible in the frame.

33.     Defendant never informed Plaintiff of any policy prohibiting taking pictures or the use of phones in the facility and as other employees routinely used their phones during work hours in the facility, no such policy existed.

34.     Moreover, on the October 15, 2021 phone call with Stephanie, she subjected Plaintiff to a barrage of insults, calling her a "nasty junkie," "a disgrace," stating Kathy (LNU) should never have accepted her community service placement at Project B.R.E.A.D., and that her probation officer had no right to place her there.

35.     While Plaintiff was prohibited from completing her community service, upon information and belief, Canon was permitted to return to Project B.R.E.A.D.

36.     After Plaintiff's termination and at her probation officer's recommendation, Plaintiff filed a police report against Canon.

37.     On or around April 21, 2022, Canon was arrested in connection with the assault.

38.     On information and belief, surveillance video at Project B.R.E.A.D. captured Canon's assault.

39.     Plaintiff reported the incident and her termination to her probation officer who related that Project B.R.E.A.D. was the only place at which Plaintiff could complete her community service requirements given the conditions of her plea agreement.

40.     Plaintiff was thus unable to complete her community service within the time set by the Court.  Plaintiff was required to appear at multiple subsequent Court appearances where she had to relate the incident with Canon in open court and was at risk of having her probabtion terminated unsatisfactorily or possibly being incarcerated.

41.     Plaintiff experienced severe emotional distress due to the offensive conduct, the hostile and intimidating work environment, and the fear of being incarcerated or having a criminal conviction on her record due to not completing her community service.

## COUNT I
## SEX HARASSMENT IN VIOLATION OF TITLE VII

42.     Paragraphs 1 through 41 are incorporated by reference as though fully restated herein.

43.     Title VII prohibits an employer from discriminating against an employee in the terms and conditions of her employment because of her sex. 42 U.S.C. § 2000e-2(a)(1).

44.     Defendant is an employer under 42 U.S.C. § 2000e(b) and Plaintiff was its employee under 42 U.S.C. § 2000e(f).

45.     Title VII's definition of employer includes the employer's agents, 42 U.S.C. § 2000e(b).

46.     As the director of Project B.R.E.A.D., Stephane (LNU) was an agent of Defendant.

47.     Volunteers, such as Plaintiff, are employees under Title VII. *See Volling v. Antioch Rescue Squad*, 11 C 04920, 2012 WL 6021553 (N.D. Ill. Dec. 4, 2012).

48.     Defendant violated Title VII by discriminating against Plaintiff due to her sex by failing to protect Plaintiff from a customer who was a known harasser, thereby creating a hostile work environment.

49.     "'[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment.'" *Cowan v. Prudential Ins. Co. of America*, 141 F.3d 751, 755 (7th Cir. 1998).

50.     The sexual harassment had the effect of substantially interfering with Plaintiff's performance and creating a hostile work environment.

51.     As a direct result of this violation of Title VII, Plaintiff suffered damages including but not limited to severe emotional distress.

## COUNT II
## SEX HARASSMENT IN VIOLATION OF THE IHRA

52.    Paragraphs 1 through 41 are incorporated by reference as though fully restated herein.

53.    Defendant is an "employer" under 775 ILCS 5/2-101(B) and Plaintiff was its employee under 775 ILCS 5/2-101(A).

54.    Under the IHRA, it is a civil rights violation for any employer, employee, or agent of any employer to engage in harassment on the basis of an employee's sex. 775 ILCS 5/2-102.

55.    Plaintiff, as a unpaid volunteer, was an employee of Defendant, and Defendant was Plaintiff's employer within the meaning of the IHRA. 775 ILCS 5/2-101.

56.    As the director of Project B.R.E.A.D., Stephane (LNU) was an agent of Defendant.

57.    The IHRA defines harassment as, in relevant part:

(E-1) Harassment. "Harassment" means any unwelcome conduct on the basis of an individual's actual or perceived race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, pregnancy, unfavorable discharge from military service, or citizenship status that has the purpose or effect of substantially interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment. For purposes of this definition, the phrase "working environment" is not limited to a physical location an employee is assigned to perform his or her duties.

*See* 775 ILCS 5/2-101.

58.    Under the IHRA, an employer is not automatically responsible for the harassment of its employees by third-parties, but will be held responsible where it does not take reasonable corrective measures. 775 ILCS 5/2-102(D).

59.    Plaintiff was sexually harassed by Defendant's third-party patron, Canon, and Defendant failed to take any corrective action, ultimately resulting in Canon physically assaulting Plaintiff.

60.    As a direct result of this violation of the IHRA, Plaintiff suffered damages including but not limited to being physically assaulted by Canon, and severe emotional distress.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

61.     Paragraphs 1 through 41 are incorporated by reference as though fully restated herein.

62.     Title VII prohibits an employer from retaliating against an employee because she engages in protected activity by opposing illegal sex discrimination, including harassment. 42 U.S.C. § 2000e-3(a).

63.      Defendant was an employer under 42 U.S.C. § 2000e(b) and Plaintiff, as an unpaid volunteer, was Defendant's employee under 42 U.S.C. § 2000e(f).

64.     Title VII's definition of employer includes the employer's agents, 42 U.S.C. § 2000e(b).

65.     As the director of Project B.R.E.A.D., Stephane (LNU) was an agent of Defendant.

66.     Volunteers, like other non-remunerated employees, such as Plaintiff, are employees under Title VII. *See Volling v. Antioch Rescue Squad*, 11 C 04920, 2012 WL 6021553 (N.D. Ill. Dec. 4, 2012).

67.     Defendant, through its agent, Stephanie (LNU) violated the IHRA when they terminated Plaintiff's employment in retaliation for engaging in statutorily protected activity, including reporting and/or objecting to Canon's sexual harassment, and ultimately, his assault, in violation of Title VII.

68.     Defendant, through its agent, Stephanie (LNU), engaged in further retaliation when Stephanie (LNU) called Plaintiff derogatory names the day after she reported Canon's assault.

69.     As a direct result of this violation of Title VII, Plaintiff suffered damages including but not limited to severe emotional distress.

## COUNT IV
## RETALIATION IN VIOLATION OF THE IHRA

70.    Paragraphs 1 through 41  are incorporated by reference as though fully restated herein.

71.    Under the IHRA, it is a civil rights violation for any employer, employee, or agent of any employer to retaliate against an employee because the employee believes they were a victim of sexual harassment in employment, and objected to, complained about, or otherwise opposed the sexual harassment. 775 ILCS 5/2-102; 5/6-101.

72.    Defendant was an employer under 775 ILCS 5/2-101(B) and Plaintiff, as an unpaid volunteer, was Defendant's employee under 775 ILCS 5/2-101(A).

73.    As the director of Project B.R.E.A.D., Stephane (LNU) was an agent of Defendant.

74.    Defendant, through its agent, Stephanie (LNU), violated the IHRA when they terminated Plaintiff's employment in retaliation for engaging in statutorily protected activity, including reporting and/or objecting to Canon's sexual harassment, and ultimately, his assault, in violation of Title VII.

75.    Defendant, through its agent, Stephanie (LNU), engaged in further retaliation when Stephanie (LNU) called Plaintiff derogatory names the day after she reported Canon's assault.

76.    As a direct result of this violation of the IHRA, Plaintiff suffered damages including but not limited to severe emotional distress.

## COUNT V

77.    Paragraphs 1 through 41  are incorporated by reference as though fully restated herein.

78.    Under the GVA, any person who has been subjected to gender-related violence as defined in Section 5 may bring a civil action for damages against a person or persons perpetrating that gender-related violence. 740 ILCS 82/10.

79.    Under the GVA, "gender-related violence" is defined, in relevant part, as (1) one or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois

that are committed, at least in part, on the basis of a person's sex, whether or not those acts have resulted in criminal charges, prosecution, or conviction. 740 ILCS 82/5.

80.     Under Illinois law, a battery is committed if one knowingly and without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual. 720 ILCS 5/12-3.

81.     A person commits an act knowingly if (1) he knows the nature or attendant circumstances of his conduct and is consciously aware that his conduct is of that nature or that those circumstances exist; or (2) he is consciously aware that that result is practically certain to be caused by his conduct. 720 ILCS 5/4-5.

82.     Canon knew that his conduct was insulting, provoking, or would cause bodily harm to Plaintiff.

83.     For purposes of the GVA, "perpetrating" means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence. 740 ILCS 82/10.

84.     Under Illinois law, corporations can be found to have acted personally under the GVA, giving rise to civil liability. *Gasic v. Marquette Mgmt., Inc.*, 2019 IL App (3d) 170756, ¶ 19, 146 N.E.3d 10, 14.

85.     Defendant through its agents and employees, took multiple actions in violation of the GVA by encouraging or assisting Canon's battery of Plaintiff. These actions included but are not limited to:

> a.   Knowingly forcing Plaintiff to interact with Canon;
>
> b.   Failed to protect Plaintiff from Canon after Plaintiff complained about Canon; and
>
> c.   Observed but failed to take any action after Canon battered Plaintiff.

86.     As a direct result of Defendant's unlawful conduct, Plaintiff has suffered physical violence, experienced emotional trauma and injury, and a loss of income.

WHEREFORE, Plaintiff, Jenifer Hefner, respectfully requests that this Court enter judgment in her favor against Defendant Project B.R.E.A.D., awarding her:

A.     Actual damages;

B.     Punitive damages;

C.     Attorneys' fees; and

D.     The costs of this action; and

E.     Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues triable herein.

The Garfinkel Group, LLC
701 N. Milwaukee Ave.
Chicago, IL 60642
Matthew Fletcher (IARDC No. 6305931)
matthew@garfinkelgroup.com
Alexis Pavlatos (IARDC No. 6330270)
alexis@garfinkelgroup.com
(312) 736-7991

Respectfully submitted,

*/s/ Matthew Fletcher*
One of Plaintiff's Attorneys